UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNEEK VIRGINIA LOWE, | : | Case No. 05-cv-117 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| HAMILTON COUNTY DEPARTMENT | : | |
| OF JOB AND FAMILY SERVICES, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT (Doc. 94) BE GRANTED IN PART AND DENIED IN PART

This employment discrimination case is before the Court on Defendant's motion for summary judgment (Doc. 94) and the parties' responsive memoranda (Docs. 103, 105).

## I.    BACKGROUND FACTS

Plaintiff Uneek Lowe alleges that her former employer, Hamilton County Department of Job and Family Services ("HCJFS"), denied her reasonable accommodations for her disability, treated her differently as an older (born 1955) African American woman than younger Caucasian women, and retaliated against her for filing discrimination claims.  (Doc. 2).

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiff was hired by HCJFS as an Eligibility Technician on January 20, 2000. (Doc. 94, Ex. E, ¶ 2, Attachment 1). She was primarily responsible for interviewing applicants/recipients to determine their eligibility for public assistance. (*Id., ¶* 5, Attachment 2).

In 1986 or 1987, Plaintiff was diagnosed with depression. (Doc. 41 at 15). Plaintiff has suffered from depression periodically since her initial diagnosis. (*Id*. at 15-21). Plaintiff's depression and anxiety negatively affects her memory, mood and ability to concentrate, causes her pain, a lack of motivation and hopelessness, and periodically caused her to miss work. (*Id*. at 31, 32). In 2002 Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and severe anxiety (Doc. 103, Attachment 3, ¶ 5; Doc. 41 at 13-14) and in 2003, Plaintiff reported that she had insomnia. (Doc. 41 at 29, 30).

In September 2001, Plaintiff needed surgery and requested FMLA leave. HCJFS approved her FMLA leave and an extension of that leave until December 2001. (Doc. 41, Exs. 6, 7).

Plaintiff told her supervisor, Charles Wilkerson, about her medical condition and the effect it had on her ability to function in the workplace. (Doc. 103, Attachment 3, ¶ 5). Specifically, among other things, Plaintiff claimed that her ADHD and anxiety limited her capacity to concentrate, multitask and learn. (*Id*., ¶ 6). Mr. Wilkerson worked with Plaintiff to find reasonable accommodations for her ADHD, including developing a filing system to help her organize and prioritize her work. (*Id*., ¶ 7).

In April 2003, Plaintiff requested, as a reasonable accommodation, that she be transferred to an intake position. (Doc. 103, Attachment 3, ¶ 9). By letter dated May 27, 2003, and by follow-up letter from her physician, Plaintiff identified the following accommodations:

(i) lower caseload;
(ii) if not lower caseload, transfer to another position;
(iii) enclosed cubicle or taller file cabinet;
(iv) have bulb replaced under shelf at desk;
(v) colored post-it notes;
(vi) various sized paper clamps;
(vii) reapplications scheduled during the morning. (*Id.*)

Mr. Wilkerson retired in May 2003 and Plaintiff was assigned to a new supervisor, Michael Shea. (Doc. 103, Attachment 3, ¶ 8). Mr. Shea was aware that Plaintiff had previously taken FMLA leave and that she had a disability. (Shea Dep. at 10). Plaintiff's interaction with Mr. Shea allegedly caused severe anxiety, and Plaintiff requested FMLA leave for medical reasons. (Doc. 41, Ex. 6). Defendant approved Plaintiff's leave of absence from May 5, 2003, through June 1, 2003. (Doc. 91, Ex. 10).

Within one month of her return from FMLA leave, Mr. Shea issued Plaintiff her first unfavorable written evaluation. (Shea Dep. at 11, 12 and Ex. 1; Doc. 103, Ex. 3, ¶ 17). Mr. Shea alleged that Plaintiff was unorganized, did not understand the job she had been doing for more than three years, and could not perform her every day routine job duties. (Shea Dep. at 13, 14-15; Doc. 103, Ex. 3 at ¶¶ 17, 18).

Plaintiff contacted David Helm, a Labor Relations Officer, to discuss concerns about her employment and to request reasonable accommodations. (Helm Dep. at 8-9;

Doc. 103,Ex. 3 at ¶ 23). Plaintiff complained to Mr. Helm that Mr. Shea had retaliated against her because of her use of FMLA leave and on the basis of her race and disability. (Shea Dep. at 40; Doc. 103, Ex. 4 at ¶ 1).

On June 3, 2003, a meeting was held between Plaintiff, Section Chief Gerald O'Flynn, Labor Relations Manager David Helm, and Labor Relations Officer Stephanie Harper, to discuss Plaintiff's accommodation requests, with a follow-up meeting on June 27, 2003. (Doc. 94, Ex. E, ¶ 8).

Mr. O'Flynn initially denied Plaintiff a transfer, asserting that he could not justify the break-up of her caseload. (O'Flynn Dep. at 40; Doc. 103, Attachment 3 at ¶ 10). However, on July 11, 2003, Plaintiff accepted a transfer from Medicaid Ongoing to Medicaid Intake within her Eligibility Technician classification. (Doc. 91, Ex. 17). Plaintiff was transferred to the intake position on August 1, 2003. (*Id., ¶* 12). All parties allegedly agreed that Plaintiff would continue in that position for three months, at which time a meeting would be held to re-evaluate whether the position accommodated Plaintiff's needs. (Doc. 42, Ex. 17 at 1, July 11, 2003 e-mail at 2, July 21, 2003 email).

In October 2003, Plaintiff learned that Defendant was transferring 11 employees to a program technician position for which she alleges she was qualified and would decrease her caseload. (Doc. 103, Ex. 3 at ¶ 25). Plaintiff's physician sent Defendant a letter indicating that an accommodation was necessary and her ADA "advocate," Joyce Rogers, told Mr. Helm that the program technician position would be a suitable accommodation. (*Id.*)

On December 15, 2003, Plaintiff was transferred to the position of Program Technician 2, CHIP. (Doc. 94, ¶ 15, Attachments 7 and 8). The CHIP position was a Pay Range 6 position, and Plaintiff's previous position of Eligibility Technician was a Pay Range 7. (*Id.,* Attachments 2 and 9). In this position, Plaintiff processed CPA applications and determined eligibility for Healthy Start, Healthy Families Medicaid. (Woode Dep. at 17; Draggoo Dep. at 11). However, Plaintiff was required to handle pending matters from her former position as well as her intake work. (Doc. 103, Ex. 3 at ¶ 21).

In March or April 2004, Ms. Draggoo told Plaintiff that she was not permitted to use flex time for 30 days. (Draggoo Dep. at 27, 28). As a result, Plaintiff filed an internal complaint. (Draggoo Dep. at 33). Plaintiff was subsequently transferred to Ms. Smith's supervision. (*Id.*)

Ms. Smith allegedly refused to sign off on the plan to demonstrate that Plaintiff had completed her work in a timely manner. (Doc. 103, Ex. 3 at ¶ 29). Plaintiff made comments in the file to indicate that she had completed the work on time, and Ms. Smith refused to acknowledge them. (*Id.* at ¶ 30). In June 2004, Ms. Smith placed Plaintiff on another action plan and set a number of cases she was to process by the end of June 2004. (Smith Dep. at 48; Lowe Dep. at 36-37).

On June 30, 2004, Plaintiff asked Ms. Smith for a conference in a private room to discuss several outstanding issues. (Smith Dep. at 35-36; 42-43; Lowe Dep. at 38-39;

Draggoo Dep. at 43-44). A confrontation between the two resulted. (Draggoo Dep. at 44, 46-47; Lowe Dep. at 39). Consequently, Plaintiff called Ms. Smith and the receptionist to apprise them she was ill and would not be able to report to work until later that afternoon. (Doc. 103, Ex. 3 at ¶ 31). Plaintiff later reported to work, but Ms. Smith told her that she had to leave the premises. (Smith Dep. at 63; Doc. 103, Ex. 3 at ¶ 32). Plaintiff emailed Mr. Helm regarding the matter and he also told her to leave the premises. (Doc. 103, Ex. 3 at ¶ 32). Plaintiff left the building as instructed. (*Id.*)

On June 10, 2004, while still employed with HCJFS, Plaintiff filed a charge with the EEOC. (Lowe Aff. ¶ 36; Doc. 94, Attachment 21). The charge included allegations that Defendant discriminated against Plaintiff on the basis of her race and disability and retaliated against her for bringing discrimination complaints. (Lowe Aff. ¶ 37; Lowe Dep. Ex. 3). On November 11, 2004, the EEOC issued Plaintiff a Notice of the Right To Sue ("NORTS"). (Doc. 41, Ex. 3).

Plaintiff worked intermittently after the June 30, 2004 incident. (Smith Dep. at 51). On July 8, 2004, Plaintiff was served with a notice of a pre-disciplinary conference scheduled for July 15, 2004. (Doc. 94, ¶ 21, Attachment 10). The purpose of the pre-disciplinary conference was to provide Plaintiff an opportunity to respond to allegations of misconduct that had occurred in June and July of 2004. (*Id.*) Plaintiff appeared for the conference on July 15, 2004, but it was continued to August 4, 2004. (*Id.,* ¶ 23, Attachment 11; Doc. 103, Ex. 3 at ¶ 33).

On July 16, 2004, Plaintiff submitted a request for a three-month leave of absence under the FMLA because, according to her doctor, she was "currently incapacitated" due to "depression, anxiety, and fatigue." (Doc. 94, Attachment 12). Plaintiff's leave was approved and the August 4, 2004 conference was postponed at Plaintiff's request. (*Id.,* ¶ 27, Attachments 13, 14). On August 3, 2004, Dr. Janet W. Cobb issued a medical opinion following a fitness-for-duty evaluation. (*Id.,* Attachment 15). According to Dr. Cobb, as of August 3, 2004, Plaintiff was "not able to perform the essential functions of the job as program technician at this time due to her medical condition." (*Id.*) Plaintiff's physician concurred that Plaintiff was not able to work at that time. (*Id.,* Attachment 16).

On October 12, 2004, Plaintiff's physician submitted a letter to Defendant requesting that Plaintiff remain off work until November 3, 2004, because Plaintiff was "unable to concentrate to perform the tasks needed at work." (Doc. 94, Attachment 17). On December 3, 2004, Plaintiff's physician submitted another letter requesting that Plaintiff remain off work until January 17, 2005 "due to stress." (*Id.,* Attachment 18).

Plaintiff filed a second charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the EEOC on December 15, 2004. (*Id.,* Attachments 23a and 23b). On March 29, 2005, Plaintiff signed a Request for Withdrawal requesting that both OCRC and EEOC complaints be withdrawn. (Doc. 41, Ex. 4 at 5). OCRC granted Plaintiff's request to withdraw her charge on April 14, 2005. (Ex. E, Helm Aff., Attachment 24). In response to Plaintiff's request to the EEOC to withdraw the same

charge, the EEOC issued a "Notice of Right to Sue (Issued on Request)" on June 3, 2005. (*Id.,* Attachment 25).

By January 2005, Plaintiff was able to return to work part-time and her doctor sent correspondence to Defendant confirming her ability to work. (Doc. 103, Ex. 3 at ¶ 34). Plaintiff's doctor requested that she be permitted to return to work part-time for the first 30 days, after which time she would return full time. (Lowe Dep. at 207).

Plaintiff returned to work on January 18, 2005, and worked a partial day. (Doc. 94, Ex. E, ¶ 74). After the partial day of work, Plaintiff again requested an extended leave of absence, and also requested repeated extensions, all of which were approved until Plaintiff's eventual removal on July 7, 2005. *(Id.,* ¶¶ 4-7, Attachments 5, 6, 7 and 8).

Plaintiff was removed for gross misconduct, dishonesty, insubordination, neglect of duty, absence without leave, and failure of good behavior. (Doc. 94, Ex. E, Attachment 191). Specifically, Plaintiff was terminated for the following reasons:

(1) Utilizing her position as an employee of the Department of Job and Family Services to conduct personal business on June 29, 2004;
(2) A verbal altercation with her supervisor on June 30, 2004;
(3) On July 2, 2004, she failed to notify her supervisor of her absence within a half-hour of her start time, and when she arrived to work at 4:00 p.m. and when told to leave by her supervisor, she refused to do so;
(4) On July 9, 2004, she called her supervisor a liar;
(5) On July 13 and 14, 2004, she failed to notify her supervisor of her absence within a half-hour of her start time;
(6) On May 2, 3 and 4, 2005, she failed to report to work or to notify her supervisor of her absence within a half-hour of her start time. (*Id.*)

# III.   ELEVENTH AMENDMENT IMMUNITY

Defendant argues that Plaintiff's claims under the ADA and FMLA in Counts I, III, and IV, and under Section 1981 and 1983 in Counts VII and IIX (*sic*) are barred by the Eleventh Amendment.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."  Through its provision of sovereign immunity, the Eleventh Amendment denies the federal courts jurisdiction to entertain a suit brought by an individual against a non-consenting state.  *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996).

The issue, however, is whether HCJFS is an "arm of the state" and thus entitled to immunity under the Eleventh Amendment.  Defendant has the burden of demonstrating that HCJFS constitutes an "arm of the state" and is therefore entitled to immunity.  *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 063 (6th Cir. 2002); *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).  Defendant is unable to meet this burden upon summary judgment.

To determine whether an entity is an "arm of the state" or simply a "political subdivision," the Court must consider several factors: (1) the state's potential liability for a judgment against the defendant; (2) the language by which the state statutes and state courts refer to the defendant and the degree of state control and veto power over the

defendant's action; (3) whether state or local officials appoint the board members of the defendant;[2] and (4) whether the defendant's functions fall within the traditional purview of the state or local government.  *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005).

## A.    The State's Potential Liability

Defendant claims that the first element is met because Defendant is reimbursed by the state for programs that Hamilton County administers for the state.  However, Defendant admits that Hamilton County funds will pay any potential judgment and Defendant fails to present evidence that the state will reimburse Defendant for costs requested by the County.  (Doc. 94 at 10).

## B.    The Statutory Language Referring to Defendant and the Degree of State Control

Under Ohio Rev. Code § 329.04(A), Hamilton County is required to establish a county department to carry out the programs instituted by the federal government for family and child assistance and medical assistance eligibility and is required to determine the eligibility for public assistance and medical assistance pursuant to Ohio Rev. Code § 5111.012.  However, as stated on its website, HCJFS is a political subdivision of the State of Ohio created by a resolution of the County Commissioners.

Furthermore, Defendant has not established that the state controls the day to day functions of Plaintiff's job.  The fact that Plaintiff's training covered state regulations, forms, and guidelines does not evidence nor establish that the state controls Plaintiff's job.  In fact, Defendant admits that it controlled the place and time of Plaintiff's work and

---

[2]  Defendant concedes that it cannot meet the third factor because appointments to HCJFS are made at the local level.  (Doc. 94 at 10).

evaluated her performance.  (Doc. 94 at 10).

### C.    Traditional Purview of State or Local Government

Defendant claims that Plaintiff acted as an agent of the state for the administration of state and federal Medicaid programs.  Specifically, Defendant asserts that all three positions Plaintiff held while employed by Defendant -- (1) Medicaid Eligibility Technician; (2) Medicaid Intake Specialist; and (3) Program Technician -- were all created under Ohio law to carry out federal and state programs for the distribution of Medicaid (Doc. 94 Ex. 5 at ¶¶ 64, 65), and, therefore, Defendant is simply an agent distributing federal public assistance dollars.  (*Id*. at ¶ 67).

Defendant cites *Cmty. Mental Health Servs. v. Mental Health Recovery Bd.*, 395 F.Supp. 644 (S.D. Ohio 2004) in support of its argument.  In *Cmty. Mental Health Servs*., the Court held that the county mental health board had Eleventh Amendment immunity from suit when it acted as an extension of the state.  This case is distinguishable from the instant case because it involved a different agency ("MHRB") and claims for due process violations as a result of Medicaid being withheld.

Here, upon review of the four factors, on balance, the undersigned recommends a finding at this juncture that Defendant has not met its burden of demonstrating that HCJFS constitutes an arm of the state and, therefore, is  not entitled to immunity.

## IV.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323 (in order to overcome a motion for summary judgment, a plaintiff must come forward with admissible evidence demonstrating that genuine issues of material fact exist for trial).  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

## V.    ANALYSIS

### A.    Failure to Exhaust Administrative Remedies

Defendant claims that Plaintiff failed to exhaust her administrative remedies as to her claims in Counts I, II, and IV, and accordingly, these claims must be dismissed.

The failure to timely exhaust available administrative remedies is an appropriate basis for dismissal of an ADA or Title VII action.  *Parry v. Mohawk Motors of Mich.,*

*Inc.*, 236 F.3d 299, 3-9 (6th Cir. 2000) *cert. denied*, 533 U.S. 951 (2001). Federal courts do not have jurisdiction to hear an ADA or Title VII claim unless a plaintiff explicitly files it in an administrative charge with the EEOC or the ADA. *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977), *cert. denied*, 435 U.S. 915 (1978).

However, the Sixth Circuit held in *Duggins v. Morganroth & Morganroth*, 195 F.3d 828, 832 (6th Cir. 1999), that "because Title VII is a remedial statute, many courts refuse to narrowly construe the charge where such a construction would preclude a plaintiff from bringing a claim." This is especially true where a plaintiff is "unschooled in the technicalities of the law and proceeds without counsel" as was the case in the instant matter. *Id*. The requirement of exhausting administrative remedies "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006).

Plaintiff filed two charges of discrimination, one of which she dually filed with the Ohio Civil Rights Commission ("OCRC") and the other with the EEOC. In her charges, Plaintiff alleged discrimination based on race, disability, and retaliation. (Helm Aff., Attachment 22). The EEOC issued a dismissal and right to sue letter to Plaintiff on November 11, 2004. (*Id.*) Plaintiff also filed a second charge of discrimination with the OCRC on December 15, 2004 alleging retaliation. (*Id.*, Attachments 23a and 23b). However, on March 29, 2005, Plaintiff signed a Request for Withdrawal requesting that

both the OCRC and EEOC charges be withdrawn. (Lowe Depo., Volume I, Defendant's Exhibit 4 at 5). Accordingly, Defendant claims that Plaintiff failed to exhaust her administrative remedies.

The undersigned finds that Plaintiff did file with the EEOC and OCRC as required. Furthermore, Plaintiff presented evidence that throughout the administrative process she proceeded either *pro se* or pursuant to incomplete legal advice. (Lowe Dep. at 90; Lowe Aff. ¶¶ 41-51). Based on these facts, Sixth Circuit caselaw, and the Court's desire to decide cases on the merits rather than procedural technicalities, the undersigned finds that Plaintiff has made a sufficient showing that she exhausted her administrative remedies prior to filing suit so as to preclude entry of summary judgment against her on this basis.

Accordingly, the undersigned recommends that Defendant's motion for summary judgment on Counts I, II, and IV for failure to exhaust administrative remedies should be **DENIED**.

### B. Disability Discrimination (Counts I and V)

Plaintiff claims that Defendant discriminated against her by terminating her employment in violation of the ADA (Count I) and Ohio Rev. Code Chapter 4112 (Count V).

When alleging disability discrimination based on indirect evidence of discriminatory motive, a plaintiff can establish a *prima facie* case by demonstrating that: (1) she is an individual with a disability; (2) she is "otherwise qualified" for the position,

with or without reasonable accommodations; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of her disability; and (5) after termination, the position remained open, or the disabled individual was replaced.[3] *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999); *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 92 (1994) (Ohio courts apply federal law on state discrimination claims).

Once a plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employee's adverse employment action. *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant carries this burden, the plaintiff must then "prove that the proffered reason was actually a pretext for invidious discrimination." (*Id.*)

### 1.    Whether Plaintiff has a disability

Defendant claims that Plaintiff cannot prove that she has a disability. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

"Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota v. Motor Mfg. v. Williams*, 534 U.S. 184, 195 (2002). A claimant must

---

[3] Generally, a plaintiff must show that s/he was replaced by someone outside the protected class. However, in a disability case, it is not necessary to show that the replacement employee is not disabled as an element of the *prima facie* case. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186, n. 11 (6th Cir. 1996).

establish that her impairment "substantially" limits one or more "major life activities."  *Id.*

at 196.  According to the EEOC regulations promulgated pursuant to the ADA,

> "'substantially limited' means 'unable to perform a major life
> activity that the average person in the general population can
> perform'; or 'significantly restricted as to the condition, manner
> or duration under which an individual can perform a particular
> major life activity as compared to the condition, manner, or
> duration under which the average person in the general
> population can perform that same major life activity.'"

*Id.* at 195-96 (*quoting* 29 C.F.R. § 1630.2(j)).  Whether an individual meets the definition

of disabled requires an individualized inquiry.  *Sutton v. United Air Lines, Inc.*, 527 U.S.

471, 483 (1999); *see also Williams v. Philadelphia Hous. Auth. Police Dep.*, 380 F.3d

751, 763 (3rd Cir. 2004) (whether a person is disabled is a question of fact for the jury to

determine).

Even if a plaintiff is not "disabled" as defined by the ADA, she can still be

protected under the ADA if she can show that the defendant regarded her as disabled.  42

U.S.C. § 12102(2)(C); *see also School Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 284

(1987) ("By amending the definition of 'handicapped individual' to include not only

those who are actually physically impaired, but also those who are regarded as impaired

and who, as a result, are substantially limited in a major life activity, Congress

acknowledged that society's accumulated myths and fears about disability and disease are

as handicapping as are the physical limitations that flow from actual impairment").

Plaintiff offered evidence that she is substantially limited in several major life

activities, including, "learning, concentrating and sleeping."  (Doc. 103, Ex. 4 at ¶ 6).

The Sixth Circuit has held that sleep is a major life activity. *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001) (noting that in "regard to major life activities, the district court and parties also assume that sleeping, concentrating, communicating, and working are major life activities."). Additionally, Plaintiff has also offered evidence that her superiors were aware of her medical problems and accordingly "regarded her as disabled." (O'Flynn Dep. at 15; Lowe Aff. ¶ 10; Shea Dep. 10, 37-38).

Therefore, the undersigned finds that Plaintiff has set forth sufficient facts that she has a disability in order to establish the first prong of the *prima facie* case.

### 2.    Whether Plaintiff was qualified for her position

In order to establish the second element, Plaintiff need only demonstrate that she was objectively qualified for the position. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574-76 (6th Cir. 2009). The ADA defines a "qualified individual with a disability as a disabled person 'who can perform the essential functions' of her job, including those who can do so only '*with reasonable accommodation*.'" *Cleveland v. Policy Mgmt. Sys., Corp.*, 526 U.S. 795, 801 (1999) (emphasis added). This inquiry should focus on plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills. *Wexler*, 317 F.3d at 576. Courts must evaluate a plaintiff's qualifications and performance *before* the events that prompted her discharge. *Cline v. Catholic Diocesan School of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 1999).

Defendant argues that according to Plaintiff's application for disability benefits, she could not return to work in January of 2005 in any capacity, and, therefore, was not qualified for the position. However, Defendant's argument focuses on facts that transpired *during* the events that prompted her discharge. This Court must evaluate Plaintiff's qualifications *before* the events that prompted her discharge. *Cline*, 206 F.3d at 662-63.

Plaintiff submitted evidence that she had been satisfactorily performing her position with HCJFS for several years before the events leading to her termination. (Doc. 103, Attachment 3, ¶ 2). In fact, Plaintiff received progressive raises and promotions, and received bonuses for food stamp accuracy. (*Id.*, ¶ 4).

Accordingly, the undersigned finds that Plaintiff has set forth sufficient facts that she was qualified for her position to satisfy the second prong of the *prima facie* case.

### 3. Whether Plaintiff can establish that she was subject to an adverse employment action

Plaintiff claims that she was subject to adverse employment actions because she was denied the right to return to work part-time in January 2005 and in March or April 2005. Conversely, Defendant argues that although Plaintiff's doctor sent a letter to Defendant claiming Plaintiff could work part-time in January 2005, every report he filed in support of her applications for disability benefits stated that Plaintiff was totally disabled and unable to work in any capacity from July 2004 through Plaintiff's termination. (Doc. 94 at 19-24).

The undersigned acknowledges that there is contradictory evidence concerning whether or not Plaintiff was even subject to an adverse employment action based on her ability to perform her job. However, for purposes of determining whether Plaintiff has established a *prima facie* case, the undersigned finds that her termination is sufficient to establish an adverse employment action.

### 4. Whether Defendant knew or had reason to know of Plaintiff's disability

Under the Americans with Disabilities Act ("ADA"), employers are required to reasonably accommodate disabled individuals, unless the accommodation imposes an undue hardship.[4]  42 U.S.C. § 12112(b)(5).  Failure to reasonably accommodate an employee with a disability is unlawful discrimination under the ADA.  *Id.*

When the defendant admits that it relied on the plaintiff's disability in making an adverse employment decision, the plaintiff may establish a *prima facie* case of disability discrimination under the ADA by showing that she: (1) has a disability; (2) is "otherwise qualified" for the position with or without reasonable accommodation; and (3) her proposed accommodation was "objectively reasonable." *Blanton v. Inco Alloys Int'l*, 123 F.3d 916, 917 (6th Cir. 1997).

---

[4]  An undue hardship is defined as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)" 42 U.S.C. § 12111(1)(A). These factors include: (1) the nature and cost of the accommodation needed; (2) the overall financial resources of the facility involved in providing the accommodation; (3) the overall financial resources of the covered entity; and (4) the type of operation of the covered entity, including the composition, structure and functions of its workforce.  42 U.S.C. § 12111(10)(B).

Reasonable accommodations may include

> "making existing facilities accessible to disabled employees, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."

42 U.S.C. § 12111(9).

Defendant submitted evidence that it met at least some of Plaintiff's accommodation requests. (Doc. 94 at 45-46). However, there are disputed issues of fact as to whether Defendant provided Plaintiff with all of the accommodations she required. (Doc. 94 at 45-46). Specifically, Plaintiff claims that she requested to return from medical leave on a part-time basis for a short period of time before she returned on a full time basis and Defendant denied her request. (Lowe Aff. ¶ 33; Lowe Dep. at 207). Defendant's refusal is sufficient to establish a genuine issue of fact as to the failure to accommodate.

Accordingly, Plaintiff has offered sufficient facts that Defendant knew or had reason to know about her disability and failed to reasonably accommodate her. Therefore, Plaintiff has alleged sufficient facts to establish the fourth factor of the *prima facie* case.

### 5. Whether Plaintiff's position remained open or she was replaced

Unlike most discrimination cases, in disability cases, it is not necessary to show that the replacement employee is not disabled as an element of the *prima facie* case. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186, n. 11 (6th Cir. 1996).

Notwithstanding this standard, Plaintiff claims that eleven non-disabled employees were transferred to the Program Technician II position for which she applied before she was transferred. (Lowe Dep 337-338). Additionally, Plaintiff alleges that these individuals were given training that she was denied. (*Id*. at 343). More specifically, Plaintiff points to Penny Hedrick who had been at the County for two years less than Plaintiff, but who was allegedly transferred before Plaintiff by simply asking her supervisor. Conversely, Plaintiff claims that she was required to provide medical documentation prior to being transferred.[5] (*Id*. at 339).

Defendant argues that there is no evidence in the record as to when any of the alleged eleven employees requested their transfers, nor is there any evidence in the record that they are not disabled. (Doc. 94 at 25-31). However, such evidence is not required in order for Plaintiff to establish the fifth factor of a disability discrimination claim. *See Monette*, 90 F.3d at 1186.

Accordingly, the undersigned finds that Plaintiff has established a *prima facie* case for disability discrimination.

### 6. Whether Defendant can articulate a legitimate non-discriminatory reason for terminating Plaintiff

Under the *McDonnell Douglas* framework, once a plaintiff offers sufficient indirect evidence to support a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1972); *Monette v. Elec. Data Sys. Corp.*,

---

[5] Defendant disputes the allegation that Plaintiff was required to provide medical documentation before she was transfered. (Doc. 105 at 102).

90 F.3d 1173, 1186 (6th Cir. 1996).

Defendant claims that Plaintiff was terminated for gross misconduct, dishonestly, insubordination, neglect of duty, absence without leave, and failure of good behavior. (Doc. 94, Ex. E, Helm Aff., Attachment 19). More specifically, she was terminated for: (1) Utilizing her position as an employee of the Department of Job and Family Services to conduct personal business on June 29, 2004; (2) A verbal altercation with her supervisor on June 30, 2004; (3) On July 2, 2004, she failed to notify her supervisor of her absence within a half-hour of her start time, and when she arrived to work at 4:00 p.m. and was told to leave by her supervisor she refused to do so; (4) On July 9, 2004, she called her supervisor a liar; (5) On July 13 and 14, 2004 she failed to notify her supervisor of her absence within a half-hour of her start time; and (6) On May 2, 3, and 4, 2005, she failed to report to work or to notify her supervisor of her absence within a half-hour of her start time. *Id*.

Accordingly, Defendant has met its burden of articulating a legitimate, non-discriminatory reason for its decision to terminate Plaintiff.

### 7. Whether Defendant's proffered reason for terminating Plaintiff was actually a pretext for discrimination

Even if Plaintiff establishes a *prima facie* case of disability discrimination, Defendant claims that she fails to show that the Defendant's non-discriminatory reasons for disciplining and firing her were pretext for discrimination.

To establish pretext, a plaintiff must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). The first type of proof requires that Plaintiff show that the basis for the selection never happened or is factually false. (*Id.*) The second type of proof consists of a demonstration that "an illegal motivation was more likely than [the reasons] offered by the defendant." (*Id.*) The third type of proof consists of evidence that other non-disabled employees who were otherwise similarly situated to Plaintiff were not selected. (*Id.*)

When an employer offers "multiple reasons for discharging a plaintiff, the plaintiff need only discredit one of the proffered reasons." *Smith v. Good Samaritan Hosp.*, Case No. 1:06cv207, 2007 U.S. Dist. LEXIS 48304, *19 (S.D. Ohio July 3, 2007); *see also Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1127 (10th Cir. 2005) (holding that discrediting one proffered reason, such as the dominant reason, can cast doubt on all remaining reasons, even if they have not been discredited).

Specifically, Defendant alleges that Plaintiff's confrontation with Ms. Smith constituted gross misconduct which allowed it to skip disciplinary steps before proceeding to termination. However, Gagilardo testified that Plaintiff's conduct should not have constituted "gross misconduct." (Gagliardo Dep. at 16). Furthermore, Plaintiff's termination document ("Order of Removal") only included two incidents (June 29 and June 30) as the reasons for Plaintiff's termination. (Helm Dep. at 21-22). However, an

order of removal must include all of the reasons for termination. A jury could reasonably conclude that the additional reasons were simply attempts by Defendant to manufacture reasons for Plaintiff's termination.

Here, the conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the granting of summary judgment. That is, the facts and inferences presented by Defendant do not diminish the contrary evidence to the point that "it is so one-sided that [Defendant] must prevail as a matter of law." *Anderson*, 477 U.S. at 252. Accordingly, Plaintiff has offered sufficient proof that Defendant's reason for terminating Plaintiff was actually pretext for discrimination.

Therefore, the undersigned recommends that Defendant's motion for summary judgment on Counts I and V should be **DENIED**.

## C. RACE DISCRIMINATION (Counts II, VI)

Plaintiff claims that Defendant discriminated against her because she was an African American, in violation of Title VII (Count II) and Ohio Revised Code Chapter 4112 (Count VI).

In order to establish a *prima facie* case of racial discrimination a plaintiff must prove that: (1) she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that a person outside the protected class was treated more favorably than her, or that she was replaced

by a person outside the protected class. *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (claims of racial discrimination under both Title VII and Section 4112 of the Ohio Revised Code "may be analyzed together, however, because Ohio's requirements are the same as under federal law).

Defendant argues that Plaintiff cannot prove a *prima facie* case of race discrimination because she cannot prove that: (1) she suffered an adverse employment action; (2) she was qualified; or that (3) a person outside the protected class was treated more favorably than her, or that she was replaced by a person outside the protected class.

Defendant does not contest the first factor, and the undersigned has already determined that Plaintiff has established a *prima facie* case with respect to the second and third factors. (*See* Section V(B)(2),(3)). With respect to the fourth factor, however, Plaintiff has failed to submit evidence that she was treated unfavorably as an African-American. In fact, she was replaced by a person within her protected class, an African-American female. (S. Smith Dep. at 16, 19). Accordingly, Plaintiff has failed to present any facts that her termination was motivated by her race upon which a reasonable jury could conclude that the alleged adverse actions were actually motivated by racially discriminatory animus as opposed to legitimate non-discriminatory reasons.

Therefore, the undersigned recommends that Defendant's motion for summary judgment should be **GRANTED** on Counts II and VI.

## D. RETALIATION (Counts III, IV, VII)

Plaintiff claims that Defendant terminated her employment because of her protected activity in violation of FMLA (Count III), the ADA and Title VII (Count IV), and Ohio Revised Code Chapter 4112 (Count VII).  (Doc. 89).

Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee who has "opposed" any practice by an employer made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  It also prohibits retaliation against an employee who has "participated" in any manner in an investigation under Title VII.  *Id.*

In order to prove a *prima facie* retaliation claim Plaintiff must show that: (1) she engaged in protected conduct; (2) Defendant knew that Plaintiff's complaints were protected; (3) Defendant took an adverse employment action against Plaintiff after she engaged in the protected activity; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (state and federal retaliation claims can be considered together – state law claims survive or fail with federal claims).  Absent direct evidence of unlawful conduct, FMLA-retaliation claims are evaluated according to the tripartite burden-shifting framework announced in *McDonnell Douglas Corp.*, 411 U.S. 792.

Defendant concedes the first two factors of the *prima facie* case.  (Doc. 94 at 54-55).  Plaintiff satisfies the third factor as Plaintiff was terminated after she took FMLA

leave and filed complaints with the OCRC and EEOC. (*See supra* at Section V(B)(3)).

With respect to the fourth factor, Plaintiff must produce sufficient evidence to create an inference that the "adverse action would not have been taken had the plaintiff not filed a discriminatory action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). To survive summary judgment, causation must be shown by evidence "sufficient to raise the inference that protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passengers Corp*., 898 F.2d 1127, 1135 (6th Cir. 1990). Defendant cannot rely on its articulated reason for the adverse action to argue that plaintiff does not meet the causal connection element of the *prima facie* test. *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001). Indeed, "[a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." *Skrjanc*, 272 F.3d at 315; *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) ("The burden of proof at the prima facie stage is minimal").

Plaintiff submits evidence that she was subjected to a series of adverse actions, each occurring after she engaged in protected activity. (Doc 103 at 1-12). Specifically, the evidence establishes a causal connection between Plaintiff's FMLA leave and the adverse actions taken against her. Plaintiff took a series of FMLA leaves beginning in October 2001. (Doc. 103 at 3-14). Within one month after the second in her series of leaves, from May 2003 to June 2003, Plaintiff received her first unfavorable performance evaluation. (*Id.*) Plaintiff began another FMLA leave in July 2004 and filed OCRC and EEOC

complaints in December 2004. (*Id.*) Several months later, Plaintiff was denied the opportunity to return to work part-time. (*Id.*)

Accordingly, the undersigned finds that Plaintiff has set forth sufficient facts to establish a triable issue as to a causal connection between the protected activity and the adverse employment action. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (proximity in time alone is sufficient to establish a causal connection); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (a lag of six months was deemed sufficient, without other evidence, to make out a *prima facie* case of retaliation). *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002) (stating that, in the FMLA context, "[p]roximity in time can raise a prima facie case of retaliatory discharge").

Therefore, Plaintiff has submitted sufficient evidence to establish a *prima facie* case of retaliation. Accordingly, the undersigned recommends that Defendant's motion for summary judgment should be **DENIED** on Counts III, IV and VII.

### E.    AGE DISCRIMINATION (Count VI [*sic*])[6]

Plaintiff claims that Defendant terminated her employment in violation of Ohio's age discrimination statute. Ohio law prohibits employers from taking adverse employment decisions because of an employee's age. Ohio Rev. Code § 4112.02. Such unlawful

---

[6] Although Plaintiff's age discrimination claim is referenced as Count VI in the amended complaint (Doc. 89 at ¶¶ 102-107), Count VI is actually a claim for race discrimination pursuant to Ohio Rev. Code Chapter 4112 . (*Id*. at ¶¶ 90-95). The age discrimination claim should have been labeled Count VIII.

employment practice is established when the employee demonstrates that her age was a motivating factor for the employment action, even though other, lawful factors may have also motivated the decision. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 101 (2003).

   If relying on circumstantial evidence, Plaintiff will survive summary judgment if she can establish issues of fact with respect to each element of the *prima facie* case: (1) she was over 40 years old; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) she was replaced by a substantially younger employee or that she was treated differently than similarly situated younger employees or that additional direct or circumstantial evidence exists that shows that the employer was motivated by Plaintiff's age in making its decision. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *McLaurin v. Fischer*, 768 F.2d 98, 105 (6th Cir. 1985) (under Ohio law, the elements and burden of proof in age discrimination claims parallel the federal law analysis).

   Plaintiff was born in 1955, so she clearly satisfies the first prong of the *prima facie* case (Doc. 2) and the second and third prongs have previously been established (*See supra* Section V(B)(2)(3)).

   With respect to the fourth factor, Plaintiff claims that each of the eleven employees who were transferred to the Program Technician position before her were younger than she was. (Lowe Dep. at 343). Defendant disputes the timing of these transfers because Plaintiff does not submit any evidence showing when the eleven employees requested a

transfer in order to prove that Plaintiff requested a transfer before these individuals. (Doc. 105 at 18). Additionally, Plaintiff does not provide any evidence of the names or ages of these individuals. Therefore, there is no record evidence that these individuals were, in fact, younger than Plaintiff.

A court need not give credence to "mere allegations" nor draw inferences where they are implausible or not supported by "specific facts." *See Anderson*, 477 U.S. at 249; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). Furthermore, "self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Village of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) (citing *Anderson*, 477 U.S. 242). Accordingly, Plaintiff's deposition testimony that eleven individuals were transferred before her fails to provide sufficient facts to support her allegation of age discrimination.

The law is clear: conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 484 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1981)). Accordingly, Plaintiff fails to establish a *prima facie* case of age discrimination.

Therefore, the undersigned recommends that Defendant's motion for summary judgment should be **GRANTED** on Count VI [*sic/*second] as to age discrimination.

## F.     State Law Claims under Ohio Rev. Code Chapter 4112

Defendant claims, in the alternative, that Plaintiff's state law claims under Ohio Rev. Code 4112 (Counts V, VI, and VII) should be dismissed for lack of subject matter jurisdiction.  Specifically, Defendant argues that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Because the undersigned recommends that dismissal of summary judgment is not appropriate with respect to Counts I, II, III, and IV, it would be improper to decline supplemental jurisdiction over the subject matter of the state law issues in Counts V and VII.  However, the undersigned is recommending that Count VI be dismissed for the reasons explained in Section V(C), *supra*.

## G.     Section 1983 Claim (COUNT VII [*sic*])[7]

Defendant alleges that Plaintiff's Section 1983 claim (Count VII) of retaliation for complaining about racial discrimination must be dismissed because Section 1983 does not cover retaliatory employment actions already covered by Title VII.  Specifically, Defendant claims that the record does not contain sufficient evidence to create a genuine issue of material fact regarding whether Defendant violated Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment.  The undersigned agrees.

---

[7]  Although Plaintiff refers to the Section 1983 claim as Count VII in the amended complaint (Doc. 89 at ¶¶ 108-112), it is actually Count IX.  Count VII is a claim for retaliation pursuant to Ohio Rev. Code Chapter 4112.  (*Id*. at ¶¶ 96-101).

To establish a *prima facie* case under Section 1983 a plaintiff must prove two elements: (1) that the government action occurred "under color of law"; and (2) that the action is a deprivation of a constitutional right or federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). For all of the reasons explained in Section V(C) *supra*, Plaintiff cannot prove that she was treated less favorably than persons outside the protected class, and there is no record evidence to support her claims of race discrimination. Accordingly, the undersigned recommends that Plaintiff's race discrimination claims (Counts II, VI) fail as a matter of law.

Furthermore, while Section 1983 may protect a plaintiff's right to equal protection under the Fourteenth Amendment, it does not cover retaliatory employment actions already covered by Title VII. *Stein v. Kent State Univ. Bd. Of Trs.*, 994 F.Supp. 898, 906 (N.D. Ohio 1998) (Plaintiff's 1983 claim for gender discrimination and equal protection fails because the record shows no evidence of intentional discrimination) (citing *Oldfather v. Ohio Dept. of Transp.*, 653 F. Supp. 1167, 1180 (S.D. Ohio 1986)); *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

Accordingly, the undersigned recommends Defendant is entitled to summary judgment on Count VII [*sic*].

### H.    Section 1981 Claim (COUNT IIX [*sic*])[8]

Defendant claims that Plaintiff's Section 1981 claim (Count IIX) for depriving her of rights because of her race should be dismissed because the statute itself does not provide a cause of action for race discrimination.  (Doc. 94 at 65).

The Sixth Circuit has held that to prevail in a claim of race discrimination under § 1981 based on circumstantial evidence, a plaintiff must meet the tripartite standard of proof for Title VII cases established by the Supreme Court in *McDonnell Douglas Corp.*, 411 U.S. 792.  *Talwar v. Catholic Healthcare Partners*, 258 Fed. Appx. 800, 805 (6th Cir. 2007).  The undersigned has already determined in Section V(C) that Plaintiff fails to meet this standard.  Accordingly, Plaintiff's § 1981 claim likewise fails.

Additionally, Section 1981 is unavailable to Plaintiff as a vehicle to pursue a damages claim against Defendant, a state actor.  "The express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive* federal damages remedy for the violation of the rights guaranteed by § 1981" when the claim is asserted against a state actor.  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (emphasis added) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

Accordingly, the undersigned recommends that Defendant's motion for summary judgment should be **GRANTED** on Count IIX [*sic*].

---

[8]  Although Plaintiff refers to the Section 1981 claim as Count IIX in the amended complaint (Doc. 89 at ¶¶ 113-117), it is actually Count X.

### I.    Damages

#### 1.    Reinstatement/Lost Pay

Defendant claims that Plaintiff cannot be awarded lost pay because she was permanently disabled prior to her termination.  (Doc. 94 at 65-66).  Whether Plaintiff was disabled prior to her termination is a disputed issue of material fact which precludes summary judgment as to the amount recoverable for lost pay.  Accordingly, the undersigned recommends that Defendant's motion for summary judgment on lost pay damages should be **DENIED**.

#### 2.    Punitive Damages

Defendant also argues that Plaintiff is not entitled to punitive damages because punitive damages cannot be recovered against government units or political subdivisions.  (Doc. 94 at 66).  Congress amended Title VII in 1991 to permit punitive damages in Title VII actions.  The amendment, however, specifically exempted governments, government agencies and political subdivisions.  *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (exempting government agency from punitive damages); *see also* 42 U.S.C. § 1981a(b)(1)[9]; Ohio Rev. Code § 2744.05(A).[10]

Accordingly, upon review, the undersigned recommends that Defendant's motion for summary judgment on punitive damages should be **GRANTED**.

---

[9]  "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Id.*

[10]  "[I]n an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function: (A) Punitive or exemplary damages shall not be awarded."  *Id.*

## VI. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's motion to dismiss/motion for summary judgment should be **GRANTED** as to Counts II, VI, VI [*sic*/second], VII [*sic*/second] , IIX [*sic*/second] (*i.e.*, racial discrimination, age discrimination, Section 1983, and Section 1981) and should be further granted as to precluding punitive damages; and that the motion should be **DENIED** as to Counts I, III, IV, V, and VII (*i.e.*, disability discrimination and retaliation) and should be further denied as to precluding claims for lost pay damages.

**IT IS SO RECOMMENDED.**

Date: <u>February 19, 2009</u>          <u>s/ Timothy S. Black</u>
                                        Timothy S. Black
                                        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNEEK LOWE,                          :     Case No. 1:05-cv-117
                                     :
          Plaintiff,                 :     Chief Judge Susan J. Dlott
                                     :     Magistrate Judge Timothy S. Black
                                     :
vs.                                  :
                                     :
HAMILTON COUNTY DEPARTMENT,          :
OF JOB & FAMILY SERVICES             :
                                     :
          Defendant.                 :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).